WAIKANE *vs.* POOHILO, W., ET AL.

---

#### ON APPEAL.

A DEED TO THE RESPONDENTS, and a will in favor of the wife, were procured to be signed by the complainant, when he was weak in mind and body, from long continued illness, and thought to be near death;

HELD, on the facts proved, that the complainant intended to dispose of all his property by will, to take effect after his death, and not a deed, and, consequently, acts of complainant tending to show ratification must be treated as ratification of what was in his mind, *i. e.,* a will and not a deed.

Opinion of the Court by HARRIS, C. J.

On the 16th day of April, 1878, the plaintiff, Waikane, signed a deed in favor of these defendants, Poohilo and Fanny Costa, conveying a portion of a house lot described in Land Commission Claim 3,690 B, Royal Patent No. 2,220, for $150.

The witnesses to the deed are H. B. Lohilani and William R. Castle, before which last gentleman as notary public the acknowledgment which would entitle the deed to record was taken. The plaintiff alleges in his bill that at the time of making this deed, which was the 13th of April, though the deed is dated the 16th, 1878, he was very sick and in expectation of death, and was attended by these two women as kahunas or doctors, who pretended that they could cure him of his disease, and that further he has no knowledge or recollection of the execution of the deed and its acknowledgment,

and that at the time of the execution of the deed he was unconscious and unaware of what he was doing. That these defendants worked upon the fears of complainant's wife by telling her that if she did not release her dower her husband would die. That within a month after the date of the deed the defendants made a partition of the land, and the defendant Fanny and her husband, one Foster Concepcion, sold her share of the land, namely, one-half of what had been conveyed for the alleged sum of $150, for $600. The complainant further alleges that though the deed mentions $150 as the consideration money, in point of fact no money was passed, and the aforesaid Concepcion well knew that fact at the time he and his wife effected their sale.

The answer admits that the land in question is and was worth much more than $150.

But the respondents aver that the complainant had desired for a long time previous to make a voluntary deed to respondents because of past support and services; and in the third paragraph of their answer respondents aver that they nursed and cared for, supported and maintained the complainant for several years previous to the date of the deed. This paragraph seems to be in direct contradiction to the second paragraph of their answer, wherein they state that they were informed and believe that the complainant was in delicate health for several years previous to the 13th of April, 1878, but have no knowledge or belief that the complainant was ill or in expectation of death on the day stated. This last recited answer would give one to understand that they could speak on the subject of the man's health from no personal observation, but merely from information and belief. Then how could they have nursed, cared for and maintained him; or, if they have nursed, cared for and maintained him, how is it that they could not speak with certainty regarding his health? And again if the complainant wished to make a voluntary deed, how is it that they gave him $150?

In the fourth section of their answer the respondents state that they purchased the land in question at the time stated in the deed, for the valuable consideration of $150. Now, it is evident that they did not pay $150 that day, both by the evidence of Lohilani, who was witness to the deed, and further than that, though there was a receipt signed, dated May 8, 1878, in point of fact there was no money passed either at the time of signing the deed or at the date of that receipt; and it is almost certain that no money was passed at all until October 21, 1879. And it further appears by the receipts that though Waikane signed the deed by his mark, he and his wife could write very well. This fact would go to support his proposition that he was very sick or that he did not know what kind of paper he was signing.

In the third paragraph of the answer the respondents state that at no time before or after the deed did they practice on the complainant as kahunas.

Now, this is contradicted not only by the plaintiff himself and Lukea, his wife, in a very detailed way, but by Kala, w., who was on the premises at the time of the signature of the deed, though she did not witness it, but details what the wife told her directly after the signature of the deed. She says that she was there immediately after Mr. Castle left, and that the complainant was lying lifeless and exhausted; and that likewise she witnessed and took part in some of the kahuna ceremonies. Likewise Kuaana, w., testified that she understood that Poohilo, w., was Waikane's doctress. Kahananui, w., testified that she herself witnessed some of the kahuna proceedings, and as has been stated above, Lukea, the wife, testified at great length on the subject, so that the defendants' averments in this behalf are most thoroughly controverted.

The testimony of H. Bolabola Lohilani, who wrote the deed and eventually set off the land, is to the effect that Waikane, the complainant, sent for him to make a will, and "that all thought about that;" that Lukea, the wife, objected

51

to making the will because it would have to be probated, and the idea was that if they made a will the complainant's heirs would come in and dispute it in Court, and they would lose the land; and, therefore, he drew this deed and neglected to draw the deed to Lukea, the wife. This would have the very effect that Lukea feared, that in case her husband died he would die seized of the portion intended for her alone, and his heirs would claim their share of that piece and leave her only her dower. But it further appears by examination of Exhibit C, which was elicited in Court, and which appears to have been unknown before to either counsel that the scrivener actually did draw a will in favor of Lukea, which was duly signed at the time and is recorded on the same page at the Record Office and treated in every respect as the deed under consideration was treated. The contrast between the testimony of the respondent Fanny and that of Bolabola and Mr. Castle is very suggestive. Fanny says that the complainant, at the time of signing the deed, was healthy, knew what he was about, and when he got tired went into the house and lay down, whilst the other two say that he was very sick indeed and exhausted. Fanny says likewise that she paid $75, and that the upper paper was the receipt, and that Bolabola was not there; yet Bolabola wrote the receipt for $150, and it is dated May 8, while the deed was made and executed April 13; and the woman, in a direct examination, says that she paid the money in May, which is the date of the receipt saying that she paid the money first, that is before Poohilo, and her receipt was first, whereas the upper receipt was not her receipt, but was that of Poohilo as well. In a cross-examination she says that she does not know when Waikane signed the top receipt, but that she paid the money three months after the signing of the deed. We are strongly of the impression that Fanny never paid any money at all. Therefore it is certain that the complainant, at the date of the deed, was not intending to sign any paper that was calculated to deprive him

of the use of his land during his lifetime; nor did he receive any money at the time of signing the deed, or contemplate receiving any money; that he was very sick at the time, and unable to attend to so important a business as bargaining for and selling his house lot; and in point of fact that there was no bargain and sale at the time, but that having called upon a person to make his will, being at the time in a singularly weak condition, overcome with long continued pain and illness, being willing to make a will to divide his property among these people after his death, he was over-persuaded by ignorant advice to sign this paper, not understanding or believing that it would have any effect to deprive him of his land. Clearly the respondents took no right by this paper at that time as against this complaint, and the question now recurs whether at any time subsequently he had knowingly done anything which would give the document efficacy as between the parties.

It is noticeable that the defendants in their answer never rely upon any subsequent ratification, but persist firmly that the act was complete, and intended to be made complete on the signature of the deed. Bolabola says that a week after he went there to fix the boundaries, as he expresses it, and Waikane came and pointed them out to him, and that he said he wanted a line run between his wife's land and the others, and that the line drawn went through his own house, and he said never mind, and made no objection. Surely there is no evidence in this that he was adding anything to his previous action, or was doing anything else than completing his arrangements for the division of the land after his death. He had received no money for it up to that time, and everything was in the same condition that it always had been, as far as he was concerned. Bolabola heard nothing further of it until October 21, 1879, eighteen full months after the signing of the deed, when the respondent Poohilo sent for him, and wanted to lease her piece of land to a Chinaman, and got $75

in advance, and she went and paid this money to Waikane. But nobody says that Waikane knew how she got the money, and the receipt itself states that it is for that piece of land which had been set off to her. Now it is to be observed that she had been occupying this piece of land for a long time before the making of the deed, and for all the time subsequent to it; and the $75 corresponds very closely with the rent that would be due Waikane for eighteen months according to their previous agreement at $4 a month; and there is nothing in the Hawaiian expressions that would indicate that it was received as purchase money rather than as rent; and even in Bolabola's testimony, wherein he is recorded to have said that before his writing the last receipt some conversation was had regarding the money being the price of the land, does not state what that conversation was, and that word "uku," when used casually, might mean the price of the land, that is its purchase, or might mean the rent of the land, according as it was running in the mind of the party conversing.

This appears to us certain that the complainant in this case did not intend, by his action on the 21st of October, 1879, to change the disposition of his land from that which he thought he had made on the 13th of April of the year preceding.

For all these reasons we think that the allegations in the bill are well sustained, and that relief should be granted as prayed for.

On presentation of decree properly drawn it will be signed.

A. S. Hartwell for plaintiff.

J. M. Davidson for respondents.

Honolulu, April 30, 1881.